IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH R. PACZONAY,<br><br>    Plaintiff,<br><br>  v.<br><br>AMERICAN RECREATION PRODUCTS, INC., ULTIMATE DIRECTIONS, INC., KELLWOOD COMPANY AND WENGER N.A. and DOES 1–10,<br><br>    Defendants. | No. C 06-03190 WHA<br><br>**CLAIM CONSTRUCTION ORDER** |

**INTRODUCTION**

This is a claim-construction order for United States Patent Nos. 5,609,207 and 6,273,128 asserted herein by plaintiff. This order addresses the seven disputed phrases selected by the parties. A technology tutorial, a full round of briefing, and a *Markman* hearing preceded this order.

**STATEMENT**

On May 12, 2006, plaintiff Joseph R. Paczonay filed a complaint alleging that defendants American Recreation Products, Inc., Ultimate Directions Inc., Kellwood Company, Wenger N.A., and Does 1–10 infringed two of Paczonay's patents. Paczonay maintained a design and manufacturing facility for producing hydration valves and systems. All companies named as defendants sold products for use in outdoor sports and recreation. American Recreation Products is a subsidiary of Kellwood.

The patents in suit both related to valves for personal hydration systems designed to provide a better flow rate and easier use in active sports. The '207 patent was drawn to a bite valve with a plurality of slits. The bite valve deformed under pressure causing the slits to open and liquid to flow through the slits. The '128 patent was drawn to a pressure-activated valve which contained a deformable diaphragm that opens and closes in response to suction. Paczonay applied for the two patents separately and the applications were not related.

**ANALYSIS**

**1.    LEGAL STANDARD.**

Claim construction is a matter of law to be decided by a judge, not a jury. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388 (1996). Courts must give words in the claim their ordinary and customary meaning, which "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc).

Where this ordinary and customary meaning in not immediately clear, courts must primarily look to intrinsic evidence (*i.e.*, the claims, the specification, and the prosecution history) to determine the meaning. *Id*. at 1314. With respect to the specification, although a difficult task, a court must distinguish "between using the specification to interpret the meaning of a claim and importing limitations from the specification into the claim." *Id*. at 1323. The latter is not permissible.

Although courts have the discretion to consider extrinsic evidence, including expert and inventor testimony, dictionaries and scientific treatises, such evidence is "less significant than the intrinsic record in determining the legally operative meaning of claim language." *Id.* at 1317 (citation omitted). "The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Id*. at 1315. "Nonetheless, any articulated definition of a claim term ultimately must relate to the infringement questions it was intended to answer." *E-Pass Tech., Inc. v. 3Com Corp.*, ___ F.3d ____, 2007 WL 80852, *4 (Fed. Cir. Jan. 12, 2007) (citing *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1326 (Fed. Cir. 2006).

2

**2.    THE '207 PATENT.**

The parties have jointly selected four disputed terms and phrases from the '207 patent to be construed at this time. They are: (1) "tubular;" (2) "integral;" (3) "integrally constructed;" and (4) "integrally connected." The parties agree, however, that the true subjects of dispute are the terms "tubular" and "integral." In arguing their proposed definitions, neither party relies on the patent's prosecution history; it was not submitted in conjunction with this claim-construction proceeding. Furthermore, at oral argument, both parties stated that the prosecution history had no bearing on the definitions of the disputed claim terms.

**A.    "Tubular."**

The term "tubular" appeared in claim 18 of the '207 patent. Claim 18 depended from claim 1. Claim 1 recited in part (col. 4:59–5:2):

> 1. Apparatus for positioning in the mouth of an individual for selectively delivering liquid from a liquid source for consummation by the individual, said apparatus being formed of resilient, flexible material, and comprising, in combination:
>
> A hollow body portion defining an interior for accommodating fluid received from a liquid source, said body portion including a fluid inlet end communicating with said interior for receiving liquid from the liquid source and a fluid outlet end spaced from said fluid inlet end;

Claim 18 read (col. 6:17–18):

> 18. The apparatus according to claim 1 wherein said body portion is generally *tubular* shaped.

Defendants argue that the term "tubular" should be limited to a "hollow article having a circular cross-section." Paczonay proposes that the term should be construed to mean "having the form of a hollow body." He relies on a dictionary definition and his purported definitions in the specification. Specifically, he described the apparatus in the specification as being formed of "resilient, flexible material and includes a hollow body portion defining an interior for accommodating fluid received from a liquid source" (col. 1:48–51). Defendants contend that plaintiff's definition of the term is far too broad and could encompass any hollow article.

The word "tubular" is a common English-language word with a readily-understood meaning. Nothing found in the specification or the claims indicates that the term should have

3

1  anything other than its commonly-understood meaning. Additionally, the parties presented no

2  evidence or argument from the prosecution history in this claim-construction proceeding, and at

3  the hearing, the parties agreed that nothing in the prosecution history addresses the meaning of

4  the term. Because "tubular" has a commonly-understood meaning and there is no basis on

5  which to conclude that it was used in any specialized way, there is no need to give it further

6  definition, with one minor exception.

7        This order holds that limiting the definition of "tubular" to only objects with a *circular*

8  cross-section is unwarranted. Cross-section-wise, tubes come in many different shapes, ranging

9  from circular to oval to poly-sided. The figures in the patent, for example, show the bite valve

10  as having a roughly elliptical shape, as shown in figure 2B.



11  This precludes any finding that the term should be restricted to

12  objects with a circular cross-section. Accordingly, the term

13  "tubular" will be given its commonly-understood meaning

14  with the caveat that it is not to be restricted to objects having a

15  circular cross-section.                    '207 Patent, Fig. 2B

16      **B.**    **"Integral."**

17        The term "integral" appeared in claim 17. Claim 17 depended from claim 1 and read as

18  follows (col. 6:15–16):

19          17.  The apparatus according to claim 1 wherein said body portion and
            said closure are of *integral* construction.

20

21        Paczonay contends that integral should mean "of or pertaining to, or belonging as a part

22  of the whole; constituent or component." He argues that this term is defined in the specification

23  in the following passage: "[a]pparatus is of *integral* construction and is formed of resilient,

24  flexible material such as rubber or plastic" (col. 3:13–15). Paczonay also refers to figures

25  depicting the invention. Defendants propose that integral should mean "functioning as a

26  solitary article." From the specification, defendants cite the same passage as Paczonay, and in

27  addition, cite the passage that stated "[i]ntegrally connected to the body portion at the fluid

28  outlet end thereof and extending across the fluid outlet end is a deformable closure 24 . . . " (col.

4

3:23–26). The term is also used in the specification describing the bite-valve closure (col. 3:39–48):

> "[p]ortion 34 is in the form of a strip of resilient flexible material *integrally* connected to the remainder of the closure at opposed strip ends . . . application of the opposed forces will deform the closure . . . and cause portion or strip 34 to form an outwardly projecting arch between the ends of the portion or strip."

As mentioned above, claim 17 depended from claim 1. Claim 1 read "a hollow body portion . . . and a deformable closure *connected* to said body portion and extending across the fluid outlet . . ." (col. 4:64–5:4). Claim 17 indicated that the deformable closure and the body portions are "integrally connected." Also, parties agree that the term "unitary construction" as used in claim 20 is defined as "construction of a single object" (Joint Stmt. at 2). Looking at the claims and specification as a whole, it is clear that "integral" must mean something more than merely connected, but something less than made from a single object. Defendants' proposed definition captures such a relationship. "Integral" means that the objects must function as a single unit. They need *not* be formed of a single piece.

This interpretation is consistent with the term's commonly-understood, plain meaning. As to dictionary definitions, both parties cite the definition that reads "of, pertaining to, belonging as a part of the whole; constituent or component." Joint Stmt. at 5–6. Similarly, integral is defined as "formed as a unit with another part." Merriam-Webster, *Ninth New Collegiate Dictionary*, 1984. All of these definitions comport with the concept that the parts must function together as a single unit, but need not be comprised of a single part. Accordingly, "integral" is held to mean "functioning as a single article."

### C.  "Integral Construction."

The phrase "integral construction" was used in claim 17. As stated in previous section construing the term "integral," it must mean "functioning as a single unit." Here, parties seem to have little dispute over the actual meaning of the term "construction," agreeing that it refers to the way the article is made. Thus, this order holds that "integral construction" means "made such that components function as a single article."

### D.  "Integrally Connected."

The phrase "integrally connected" appeared in claim 2 which depended from claim 1. It

recited (col. 5:20–23):

> 2. The apparatus according to claim 1 wherein said at least one portion comprises a strip of resilient flexible material *integrally connected* to the remainder of said closure at opposed strip ends.

Again, the term "integrally connected" relies on the construction of "integral," as described above. Plaintiff proposes that the term be defined as "made as one continuous piece," while defendants propose that it should mean "connected such that the component parts function as a solitary article." Plaintiff's proposed definition conflicts with this order's definition of "integral." The parts must *function as* a single piece; they must not be *made* of a single piece (as a molded unit, for example). Thus, importing the prior definition of "integral" into this claim, this order holds that "integrally connected" is construed to mean "joined to function as a single article."

### 3. THE '128 PATENT.

The parties have selected three disputed phrases to be construed by this order. They are: (1) "integrally connected;" (2) "tubular housing member;" and (3) "integrally connected to said tubular housing member." The third term depends on the construction of the first two, so it will be addressed last. At oral argument, parties agreed that the substance of their dispute lies with the term "integral." As with the '207 patent, the parties did not submit the prosecution history. The parties stated that the prosecution history had no bearing at all on the definitions of the disputed claim terms.

#### A. "Integrally Connected."

The phrase "integrally connected" appeared in claim 21 which recited (col. 8:28–45):

> 21. Apparatus for controlling the flow of fluid through a fluid passageway, said apparatus comprising a pressure-activated valve for receiving fluid from a fluid flow passageway and including a tubular housing member formed a resilient molded material and a deformable diaphragm formed of resilient molded material *integrally connected* to said tubular housing member and movable between a first position wherein said diaphragm is closed and forms a substantially fluid-tight seal preventing fluid flow through said tubular housing member and a second position wherein said diaphragm defines an opening responsive to fluid pressure within said tubular housing member, said pressure-activated valve additionally including a wall providing a hinged interconnection between said tubular housing member and said diaphragm, said

6

> wall inverting when said diaphragm moves between said first and second position.

The term appeared in the same context in claim 24. In contrast, claim 26 recited "a tubular housing member and a deformable diaphragm of resilient material *connected* to said tubular housing member and moveable responsive to a change in fluid pressure" (col. 9:28–10:3).

The term also appeared in claim 14, which recited "[t]he apparatus according to claim 13 wherein said diaphragm is *integral* with said outer tubular housing member" (col. 7:63–65). Claim 13 recited an apparatus where the outer housing member was formed of a hard, inflexible material, and the inner tubular was formed of a flexible, resilient material.

Plaintiff contends that this term should mean "joined to the tubular housing to form a single part or piece; the tubular housing, diaphragm, and the wall surrounding the diaphragm are all molded into a single integral part or component called the pressure activated apparatus." In support, Paczonay points out that the specification stated "[t]ypically, closures of this type employed on containers utilize multiple piece [sic] housings or bodies in which the valve is mounted. While closures used for such applications may function generally satisfactorily, in some applications it is desirable not to employ multiple piece [sic] constructions" (col. 1:16–20). This statement shows that constructing the valve from a single piece of material was desirable, but this limitation never appeared in the claims.

In response, defendants argue that "integrally connected" means "connected such that the component parts function as a solitary article," the same construction that defendants proposed for the term "integral" as used in the '207 patent. Defendants cite to the specification, which states "[A] wall 54 is positioned within the tubular housing and provides a hinged interconnection between the diaphragm and the tubular housing, the wall being *integrally* formed with the diaphragm and the tubular housing and of course constructed of the same material" (col. 4:31–35).

Both parties cite the following passage from the specification describing a preferred embodiment in support of their respective definitions: "[d]iaphragm 84 and outer tubular housing member along with wall 91 interconnecting same are integrally molded. The housing members 88, 90 are secured together during a molding process wherein the housing member 88

7

is molded in situ on housing member 90" (col. 5:66–6:3, Fig. 5). From the figure, it appears that the housing members are secured inside one another to form a single unit.



'207 Pat. Fig. 5

Defendants interpret this language to indicate that Paczonay necessarily intended that the two pieces be molded separately, then joined together such that they function as a unit. Paczonay argues in response that this indicates that the pieces were molded together to form a single unit. Paczonay also contends, without presenting supporting evidence, that one skilled in the art would know that the pieces are intended to be molded as one piece. It seems that here, Paczonay is attempting to read a limitation from the specification into the claims. The specification mentions the desirability of molding the two pieces together, but doing so is never mentioned in the claims. Simply put, both parties are trying to find definitions for the term in the specification that are not there. Accordingly, the specification of the '128 patent does not indicate that "integral" should be given anything other than its plain-language meaning.

The term "integrally connected" does not require that an article be formed of a single, continuous piece, as plaintiff argues. Defendants' proposed definition, that the parts must be joined to function as a single article, adequately captures the plain meaning of the term. Here, "integrally connected" is held to mean that the pieces are joined to function as a single article, including, but not limited to, a molded unit.

### B.   "Tubular Housing Member."

The phrase "tubular housing member" appeared in claim 21, 26, and 27. Claim 27 depended from claim 26 and recited (col. 10:14–19):

> 27. The apparatus according to claim 26 wherein said fluid flow passageway includes a hydration delivery tube, said *tubular housing member* being connected to said hydration delivery tube and cooperable therewith to deliver a liquid to said pressure activated valve from a source of liquid.

Plaintiff's proposed definition for this term is a "housing member having the form of a

hollow body made of resilient material." Defendant contends that this term should mean "a hollow article, having a circular cross section, which houses the wall and the deformable diaphragm." "Housing" is an agreed-upon term which parties have construed as "an enclosure" (Joint Stmt. at 3).

As stated previously, "tubular" is a commonly-understood English word. Both parties cite to sections of the specification, but no reference in the specification or claims indicates that the term should have anything other than its plain meaning. As such, it will be given its commonly-understood meaning, with the caveat that it will not be limited to having a circular cross-section.

### C.     "Integrally Connected To Said Tubular Housing."

The phrase "integrally connected to said tubular housing" appeared in claim 21 and 26. This order has already construed the terms "integrally connected" and "tubular housing." Thus, this order holds that this disputed term means "joined to a hollow enclosure having a tubular form to function as a single article."

### CONCLUSION

The foregoing claim-construction ruling shall govern all subsequent proceedings herein.

**IT IS SO ORDERED.**

Dated: January 30, 2007

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

9